Aaron Dwayne PROCTOR, Appellant,

v.

STATE of Texas, Appellee.

No. 11–88–149–CR.

Court of Appeals of Texas,
Eastland.

Dec. 16, 1993.

Opinion Overruling Motion for Rehearing
Feb. 3, 1994.

Michael B. Charlton, Catherine Greene Burnett, Houston, for appellant.

John B. Holmes, Dist. Atty., Timothy G. Taft, Asst. Dist. Atty., Houston, for appellee.

## OPINION

McCLOUD, Chief Justice.

### On Remand

The jury convicted Aaron Dwayne Proctor of aggravated robbery and assessed punishment at confinement for life.[1] This court reversed the conviction and dismissed the indictment on the grounds that the conviction was barred by the doctrine of double jeopardy. *Proctor v. State*, 806 S.W.2d 252 (Tex. App.—Eastland 1990). The Court of Criminal Appeals held that jeopardy had not at-

---

1. Appellant was convicted in a prior trial in 1982. The conviction was reversed and remanded by the 14th District Court of Appeals on December 19, 1985. The present conviction was the result of a 1988 trial.

tached,[2] reversed this court's judgment, and remanded the cause for consideration of appellant's remaining points of error. *Proctor v. State*, 841 S.W.2d 1 (Tex.Cr.App.1992). Appellant has not filed a supplemental brief on remand. We have considered the remaining points. We overrule each and affirm the conviction.

There is no challenge to the sufficiency of the evidence. The record reflects that on the morning of January 29, 1982, appellant, appellant's brother, and Jonathan L. Lemell,[3] together with two other young black males, were observed in the parking lot in front of the W.K. Superette, a grocery store owned and operated by Wing K. Lew and his wife. W. Dee Prescott was working at the Fina station and had a "good view" of the front of the Superette. Prescott saw "five teenagers prancing up and down in front of the store ... [p]rancing around like they up to something." The teenagers went into the store, stayed a short time, and then came out running. They ran down to a candy factory, and two of the teenagers went in. Prescott testified that the three who waited outside were "[l]ooking around like they scared to death, scared somebody was after them." The two came out of the candy factory, and Prescott saw all five get into an old black car and take "off like there was a fire behind them, like going to put out a fire or something." Soon after, ambulances arrived, and Prescott learned that Mr. Lew had been shot.

John Werner owned the Dixie Hardware Company which was across the street from the Superette. He also saw the five young men in front of the store. About 15 minutes after he saw the men leave the store, he was told that Mr. Lew had been shot. Werner went inside the store and found Mrs. Lew cradling Mr. Lew. Mr. Lew was covered with blood, and "there was a huge puddle of blood on the floor." Mr. Lew made "one gurgle or groan," and then there were no other signs of life. Werner called the police and waited for the ambulances to arrive.

Wilbert Jacobs, Jr., went into the Superette at about 10:00 a.m. He noticed five "guys" in the parking lot. Jacobs quickly left the Superette when he could not find the brand of cigarettes he wanted. The "guys" were still in the parking lot. Jacobs recognized the "guys" because he had seen them before in the neighborhood. Two of the boys had "travel bags." Jacobs went down to a liquor store and then passed back by the Superette. This time three of the boys were "giggling and laughing." Two seemed "more serious." Jacobs identified appellant and Lemell as being the two who were "more serious."

Gloria Windom was working at the Superette the morning of January 29. She was filling a cigarette rack when she heard "something ... it sounded like a shot." When she turned around, Lemell had a pistol pointed in her face. His voice was "[l]oud and mean" when he told her: "Get down! Get down on that floor ... or I will shoot you! ... You better not open up your mouth or I will shoot you, I will kill you." Windom believed him and did exactly what he said. When she opened the register as Lemell had told her to, "another one came in all over [her] back" reaching over to get the "money and stuff" from the cash register. Lemell told her: "Get up! Get back here!" He pushed her through a doorway "all over" Mr. Lew and into the cooler. Both Mrs. Lew and Windom were in the cooler crying and scared. Mrs. Lew opened the cooler door, and Windom saw "three of them going out

---

**2.** In its opinion, the Court of Criminal Appeals relied upon and quoted extensively from a November 8, 1982, pre-trial hearing. The record of that hearing clearly showed that jeopardy had not attached because the present aggravated robbery charge was dismissed or abandoned with the trial court's permission before the jury was impaneled and sworn. The record of the November 8, 1982, pre-trial hearing has never been a part of the appellate record before this court. It was not filed or urged by any of the parties before we decided our original opinion in which we held that the record before us showed that jeopardy had attached. It was not included in the record returned to this court from the Court of Criminal Appeals, and it has not been filed with this court since the case was remanded.

**3.** Jonathan L. Lemell and appellant were tried together. Lemell has also perfected an appeal. Lemell's conviction is affirmed this same date in an unpublished opinion. *Lemell v. State*, No. 11–88–150–CR (Tex.App.—Eastland, December 16, 1993).

the front door." Windom ran to the front door, locked it, and called for an ambulance and the police.

Dr. Aurelio A. Espinola, Deputy Chief Medical Examiner for Harris County, conducted the autopsy on Mr. Lew. Dr. Espinola testified that Mr. Lew died as the result of a single gunshot wound to the right side of his forehead. Based on the gunpowder striplings and soot around the entry wound, Dr. Espinola concluded that the gun was approximately three inches from Mr. Lew's head when it was fired.

Early in the afternoon of January 29, appellant and Lemell were arrested at a house near the Superette. Appellant was lying on a bed in the rear bedroom with his back to the bedroom door when he was apprehended. After being admonished, both appellant and Lemell gave statements to the police. In his statement, appellant stated: "I turned back around to face the Chinaman who was now standing up. I took the gun out of my back pocket and pointed it at him and fired." Appellant also stated that the five of them divided the money and the food stamps and that they each got "thirty dollars in money and about three dollars worth of food stamps." Lemell stated that, after "the Chinaman" was shot, he pulled his gun and "told the [C]hinaman's wife and the black lady not move." Lemell further stated that: "We split the money and all five of us got an equal share. I got about $24."

■ Appellant filed two motions to sever: one on the basis that Lemell's confession was incriminating to him and the other that, because Lemell had a prior conviction, the cases should be severed pursuant to TEX. CODE CRIM.PRO.ANN. art. 36.09 (Vernon 1981) and that a joint trial would prejudice him. Both motions were denied. In his first point, appellant argues that the trial court erred because Article 36.09 required the cases to be severed and because of the prejudicial impact of a joint trial. We disagree.

The trial court addressed the motions to sever in pre-trial hearings on April 5, 1988, and May 13, 1988. The only evidence offered by appellant was Defendant's Exhibit No. 1 (a copy of a judgment convicting Lemell of unauthorized use of a motor vehicle and plac-

ing him on probation for two years) and Defendant's Exhibit No. 2 (copies of the motion and petition for the juvenile court to waive its jurisdiction over appellant and a copy of the court's order waiving its jurisdiction and transferring appellant to the criminal district court). The State offered to stipulate that it would not introduce or attempt to elicit any evidence about Lemell's previous convictions at the guilt/innocence stage. Appellant did not accept the stipulation. The record does not reflect whether appellant had any prior convictions.

The defendant seeking a severance has the burden of timely filing a motion and offering evidence to support his allegations. Article 36.09; *Robinson v. State,* 449 S.W.2d 239 (Tex.Cr.App.1969). Appellant did not offer evidence that, while Lemell had an admissible prior conviction, he did not and, therefore, that he was entitled to a mandatory severance. *Barrientes v. State,* 752 S.W.2d 524 (Tex.Cr.App.1987); *Saunders v. State,* 572 S.W.2d 944 (Tex.Cr.App.1978); *Ransonnette v. State,* 522 S.W.2d 509 (Tex.Cr.App. 1975); *Robinson v. State,* supra. There was no evidence offered to support appellant's argument that a joint trial would be prejudicial. *Robinson v. State,* supra. The first point of error is overruled.

■ In his next three points, appellant argues that the 1988 prosecution which is the subject of this appeal was barred by the statute of limitations. The Court of Criminal Appeals recently held in *State v. Yount,* 853 S.W.2d 6 (Tex.Cr.App.1993), that an indictment which alleges an offense barred by limitations confers jurisdiction upon the trial court and that the defendant must bring the limitations defect to the trial court's attention. In the present case, appellant's limitations argument was not presented to the trial court until after the jury retired to deliberate as to punishment. We hold that appellant did not timely raise his limitations argument and that appellant has waived any objections. See *State v. Yount,* supra. The second, third, and fourth points are overruled.

Appellant's fifth and sixth points address his claims that the 1988 prosecution was barred by the double jeopardy clauses of the

federal and state constitutions. The Court of Criminal Appeals held in *Proctor v. State*, supra, that the 1988 prosecution was not barred.

■ In his seventh and eighth points, appellant argues that the trial court erred in admitting Lemell's confession. Appellant contends that the admission of Lemell's confession denied him his rights under the confrontation clause of the U.S. CONST. amend. VI and Tex. Const. art. I, § 10. Appellant argues that the redaction of his name from the confession and the limiting instruction the trial court gave the jury were not adequate to secure his constitutional rights. We disagree.

Appellant's name was excluded from Lemell's confession. The jury was instructed that it could not consider Lemell's confession in determining whether appellant was innocent or guilty.

The United States Supreme Court stated in *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987):

As our discussion above shows, the calculus changes when confessions that do not name the defendant are at issue. While we continue to apply *Burton* [*v. U.S.*] [391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) ] where we have found that its rationale validly applies, see *Cruz v. New York*, [481 U.S. 186], 95 L.Ed.2d 162, 107 S.Ct. 1714, we decline to extend it further. We hold that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence. (Footnote omitted)

We disagree with appellant's contention that "the State complied with the barest of formalities of *Richardson* and *Cruz* while providing none of the substantive protection of the Sixth Amendment those cases require." We do not find that Lemell's confession was "virtually the only incriminating evidence" against appellant.

The trial court properly deleted appellant's name from Lemell's confession and gave a proper limiting instruction. Moreover, there was sufficient evidence independent of Lemell's confession to establish appellant's guilt: Jacobs identified appellant as one of the only five people in the parking lot of the Superette right before the robbery was committed and appellant admitted his involvement in his confession. Error, if any, in the admission of Lemell's confession would be harmless. *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Osteen v. State*, 642 S.W.2d 169 (Tex.Cr.App.1982). See also TEX.R.APP.P. 81(b)(2). The seventh and eighth points are overruled.

■ Next, appellant argues that the trial court erred in admitting a photo of Mr. Lew's family and in permitting the State to introduce evidence of Mr. Lew's character. State's Exhibit No. 10 was a portrait of the Lew family showing Mr. and Mrs. Lew, their children, their children's spouses, and their grandchildren. Appellant specifically argues that the testimony of Mr. Lew's daughter that her father was called "Mr. Friendly" was reversible error. We disagree.

Nancy Lew Fong testified that she was Mr. Lew's daughter and that she had grown up working in the store. Fong testified about her father's business practices in operating his store: where he kept money hidden; how he would cash neighborhood employees' paychecks on Fridays and Saturdays; and that he had the most money in the store on Fridays. Fong testified that, on Friday, January 29, 1982, her younger brother's wife called her at her home at 11:30 a.m. As a result of that phone call, Fong and her husband arrived at Ben Taub Hospital at noon to find that her father was dead. She identified her father in State's Exhibit No. 10 and stated that it was an accurate representation of how her father appeared shortly before his death. She further testified that she had two brothers, that she was married, that she and her husband had children, that both her brothers were married, and that they each had children. Fong also testified as follows:

[PROSECUTOR]: During his life, what was your father's name?

A: Wink Lew or Mr. Friendly.

[DEFENSE COUNSEL]: I would object to her going into the character and nature of the deceased.

THE COURT: Overruled.

Albert Lew also testified that he was married and had a child at the time of his father's death.

Appellant cites *Armstrong v. State*, 718 S.W.2d 686 (Tex.Cr.App.1985), to support his argument that Fong's testimony that her father's name was "Wink Lew or Mr. Friendly" was the "continued admission of highly prejudicial facts that were completely outside the scope of legitimate proof" and "allowed the State to place before the jury evidence of the deceased's character" that was immaterial and whose sole purpose was to inflame the jury. *Armstrong* is factually distinguishable. In *Armstrong*, the deceased's widow testified as the State's final rebuttal witness. The widow testified that her husband was a "hard-working man"; that he "never missed a day's work even if he was sick"; that "my kids couldn't ask for a better daddy"; that he was a "good husband"; that he was "peaceful"; that he was "a real nice person"; that he was "real nice to everybody . . . white, Spanish, colored"; and that he had a lot of friends.

■ In the present case, the State called 17 witnesses during the guilt/innocence phase. Fong was the fourth witness. Her testimony mainly addressed her father's business practices and the events of the day of his death. Her testimony that her father's name was "Wink Lew or Mr. Friendly" did not constitute "continued admission of highly prejudicial facts." The testimony's "sole purpose" was not to "inflame the minds of the jury." The admission of Fong's testimony was not error. State's Exhibit No. 10 was cumulative of other testimony concerning Mr. Lew's family. Moreover, if there was error in the admission of either Fong's testimony or the photograph, the evidence made no contribution to the conviction or to the punishment assessed. Rule 81(b)(2); *Harris v. State*, 790 S.W.2d 568 (Tex.Cr.App.1989). The ninth and tenth points are overruled.

■ In his eleventh point, appellant contends that the trial court erred in overruling his objections to the prosecutor's comments during closing argument because the comments were directed to appellant's failure to testify. We disagree.

Appellant complains of the following argument by the prosecutor:

What type of mentality does it take for somebody like Jonathan Lemell to stand there with a pistol in the face of Gloria Windom after he saw Mr. Lew fall down with a gunshot in his head and threaten Ms. Windom and have her get down on her knees with a gun in her back telling her to shut up or he will kill her too? What type of mentality? And then as you heard from the evidence he manhandled Gloria Windom and Mrs. Lew. What type of person could watch the wife, Mrs. Lew, sit there hysterical and crying watching her husband bleed to death on the floor? You can tell from the confession and from the testimony and everything you have heard in this case, there was no sign of remorse in this case whatsoever. No kind of humanity by either one of these defendants.

Unlike the cases appellant relies on, *Bower v. State*, 769 S.W.2d 887 (Tex.Cr.App.), *cert. den'd*, 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989), and *Dickinson v. State*, 685 S.W.2d 320 (Tex.Cr.App.1984), where direct comments were made as to the defendant's demeanor during the trial, the prosecutor did not inject new facts harmful to appellant. The argument was a summation of the evidence. We find no error. See *Allridge v. State*, 762 S.W.2d 146 (Tex.Cr.App.1988); *Franklin v. State*, 693 S.W.2d 420 (Tex.Cr.App.1985); *Banks v. State*, 643 S.W.2d 129 (Tex.Cr.App.1982); *Todd v. State*, 598 S.W.2d 286 (Tex.Cr.App.1980). The eleventh point is overruled.

■ Next, appellant argues that his confession should have been suppressed because it was the result of an illegal warrantless arrest. Appellant contends that the police officers had time to secure an arrest warrant and that there was no possibility of escape. Therefore, the arrest was illegal, and it tainted appellant's confession. The trial court found that probable cause existed for the

arrest, entered findings of fact, and overruled appellant's motion to suppress.

The record reflects that Mr. Lew was killed shortly after 10:00 a.m. The first police officer arrived at the scene between 10:20 a.m. and 10:25 a.m. Homicide detectives arrived on the scene at 11:40 a.m. At 12:30 p.m., the detectives talked to Prescott and learned about the five teenagers leaving in an old black car that had been parked in front of the candy factory. At about 1:05 p.m., the detectives located the owner of the black car, Willard Douglas Green. Green told the detectives that his cousin "Pat" had borrowed his car that morning. Green became "very excited, nervous, [and] talkative" when he learned about the robbery/shooting at the Superette. While he could not remember his cousin's last name or address, Green took the detectives to the apartments where he thought Pat would be. The time was approximately 1:30 p.m. Pat was not at the first place they went. At the second place Green took them, the officers learned that Pat's last name was Robinson. It was 1:45 p.m. when they arrived at the third location where Green thought his cousin might be. There, the detectives found Patrick Wayne Robinson.

Robinson was "very excited," and he was "talking rapidly." Robinson repeatedly told the detectives, "I know they did something wrong but I just gave them a ride." Robinson told the detectives that he would take them to the location where he let his passengers out. It was approximately 1:50 p.m. at this time.

Robinson took the officers to an apartment complex where "Calvin" was supposed to be. An older black woman was in the apartment, and a young black male was standing in the background. When the officers asked if Calvin was there, the woman said there was no one there by that name. The officers brought Robinson to the door. Robinson identified the young black male as Calvin.[4] Calvin was arrested at approximately 2:00 p.m.

The black woman said that she had already heard about the robbery/shooting at the Su-

perette that morning. A detective remained with her. She told the detective that she had seen five young black males at the corner near the Superette at 9:30 or 10:00 a.m. She identified three of them as Dwayne, Jonathan, and Leon.

Robinson had also told the officers that "Dwayne" and "Jonathan" were involved. Robinson took them to the home of Shirley Wiltz. Wiltz told the officers that appellant was there. Wiltz was very cooperative, was "almost apologetic," and gave the officers permission to come inside. Appellant was found sleeping in one bedroom, and Lemell was found sleeping in another bedroom. The officers took both appellant and Lemell out to the front porch. When the officers determined their identities, appellant and Lemell were placed under arrest. It was about 2:10 p.m., 20 minutes after the detectives first learned of "Dwayne" and "Jonathan" and two and one-half hours after the investigation started.

The record reflects that the detectives were visiting locations near the Superette, that they were following various leads, and that it took at least four hours to secure an arrest warrant in Harris County. Until they located the actual people, the detectives had only first names, no last names or addresses, as leads. At one location, they were specifically told that the person whom they were looking for was not present when in fact he was standing in the background.

The record supports the trial court's findings that the officers had probable cause for the warrantless arrest of appellant. TEX. CODE CRIM.PRO.ANN. art. 14.04 (Vernon 1977); *Romero v. State*, 800 S.W.2d 539 (Tex. Cr.App.1990); *Green v. State*, 615 S.W.2d 700 (Tex.Cr.App.1980), *cert. den'd*, 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981). See also *West v. State*, 720 S.W.2d 511 (Tex.Cr. App.1986), *cert. den'd*, 481 U.S. 1072, 107 S.Ct. 2470, 95 L.Ed.2d 878 (1987). The twelfth point is overruled.

■ Next, appellant argues that the trial court erred when it failed to submit his requested charge on conspiracy. Appellant

---

4. Calvin was appellant's younger brother.

contends that conspiracy is a lesser included offense of aggravated robbery. We disagree.

TEX.CODE CRIM.PRO.ANN. art. 37.09 (Vernon 1981) provides:

An offense is a lesser included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

Under the facts of this case, we do not find that conspiracy is a lesser included offense of aggravated robbery.

At the time the offense was committed, TEX.PENAL CODE ANN. § 29.03 (Vernon 1974) provided that a person committed the offense of aggravated robbery when, in the course of committing theft with the intent to obtain or maintain control of the property taken, a person causes serious bodily injury to another or uses or exhibits a deadly weapon. TEX.PENAL CODE ANN. § 15.02 (Vernon 1974) states that a person commits the offense of criminal conspiracy when, with the intent that a felony be committed, he enters into an agreement with one or more persons and when one or more of the parties to the agreement performs an overt act in furtherance of the agreement. We agree with the Fort Worth Court of Appeals that criminal conspiracy contains additional elements of an agreement with others to commit the offense and action in furtherance of the agreement and that, therefore, criminal conspiracy is not a lesser included offense under Article 37.09 of aggravated robbery. *Outland v. State*, 810 S.W.2d 474 (Tex.App.—Fort Worth 1991, pet'n ref'd). The thirteenth point is overruled.

In his fourteenth point of error, appellant challenges the trial court's overruling of his *Batson* [5] motion to quash the jury. Appellant made his *Batson* motion after the jury was selected but before it was sworn; therefore, the motion was timely. *Rousseau v. State*, 824 S.W.2d 579 (Tex.Cr.App.1992). Appellant contends that the State used its strikes to keep minorities off the jury panel.

In *Batson v. Kentucky*, supra, the Supreme Court prohibited the use of peremptory challenges to strike potential jurors solely on the basis of their race. Texas adopted this prohibition in TEX.CODE CRIM.PRO.ANN. art. 35.261 (Vernon 1989) and *Keeton v. State*, 724 S.W.2d 58 (Tex.Cr.App.1987). The defendant establishes a prima facie case of purposeful discrimination by showing that one or more peremptory challenges were used to remove potential jurors who are members of a cognizable racial group and that the facts and relevant circumstances raise an inference that at least one peremptory challenge was used to exclude a potential juror based on race. *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Batson v. Kentucky*, supra; Article 35.261; *State v. Oliver*, 808 S.W.2d 492 (Tex.Cr.App.1991); *Keeton v. State*, supra. Once the defendant establishes a prima facie case of discriminatory use of peremptory challenges, the burden shifts to the State to show a racially neutral reason for striking each potential juror. *Batson v. Kentucky*, supra; Article 35.261; *Keeton v. State*, supra. After the State gives its reasons, the trial court must consider the evidence and decide whether the defendant established purposeful discrimination. *Keeton v. State*, supra.

The burden of persuasion remains with the defendant the entire time to establish purposeful discrimination. *Batson v. Kentucky*, supra; Article 35.261. The defendant has the right to refute the State's explanations or to show that the explanations are a pretext through either an offer of proof or by bill of exception. *Salazar v. State*, 795 S.W.2d 187 (Tex.Cr.App.1990). The appellate court applies the "clear error standard of

5. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

review" by reviewing the record including the voir dire and the racial makeup of the venire, the prosecutor's neutral explanations, and the defendant's rebuttal and impeaching evidence. *Hernandez v. New York,* 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *Vargas v. State,* 838 S.W.2d 552 (Tex.Cr.App. 1992) (not yet reported).

■ The record reflects that 109 people were on the venire panel. Of the 109, 19 were black and 6 were Hispanic. One black member of the venire panel left during a jury shuffle and did not return, six were struck for cause, one was excused by agreement, one was struck by the defense, and eight were struck by the State. Three Hispanic members of the venire panel were struck for cause, one was excused by agreement, and one was struck by the State. The jury panel consisted of two black members and one Hispanic member.

The prosecutor stated that he struck six of the minority members of the panel (Panel Members Nos. 13, 21, 61, 85, 103, and 106) because they stated that rehabilitation was the main factor they would consider in assessing punishment. The prosecutor stated that he was concerned with that response because the defendant was 16 years old at the time the offense was committed and there had been 6 years between the time of the first trial and the present trial. He thought that considering rehabilitation as the main factor might lead to a lighter sentence than the State thought was appropriate. The prosecutor further stated that No. 21 was also cut because he was uncomfortable with her answers and because he sensed that she was antagonistic to the State. The prosecutor stated that he vacillated on No. 85 but eventually struck her because of her consideration of rehabilitation and because of her resistance to assess a life sentence for a first offender. No. 106 also indicated that the youthfulness of the defendant would be a major consideration along with rehabilitation.

The prosecutor further stated that he struck Nos. 49 and 86 because they considered age to be an important factor in assessing punishment. The prosecutor again expressed his concern that this would result in a lighter sentence than the State thought was appropriate. No. 39 was struck because he had a previous theft conviction as well as 12 outstanding warrants for his arrest.

When the defense pointed out that five members of the jury panel had stated that rehabilitation was their primary consideration for punishment, the prosecutor explained why he had not struck them. The prosecutor stated No. 10 would have been struck except that she worked with the wife of another prosecutor who had said that No. 10 would be a good State's witness. No. 36 stated that he would not have a problem assessing a life sentence for a first offender. The prosecutor "read him to be very strong on punishment in the two areas [he] was most concerned about ... youth and first offender[s]." The prosecutor stated that his notes showed No. 59 was more concerned with deterrence. Further, No. 59 was also a minority member of the panel, and the prosecutor stated that he did not "have any articulable reason for striking" him. The prosecutor stated that No. 72 appeared to have no problems with first offenders or with a life sentence. His notes reflected that she said deterrence as well as rehabilitation were considerations for her. Finally, the prosecutor said he had a hard time deciding over No. 91. He finally decided not to strike him because No. 91 did not indicate any difficulty with age or a life sentence for a first offender. The prosecutor concluded by stating:

> That is why the people that put down R [rehabilitation] were struck. Just for accuracy, that means that only three of the majority race people who said R were left on the jury; the other two people who said R that were left on the jury, one was a black man and one was a Spanish man, only three whites who said R were left on the jury, and in each of those cases there was again a specific unique reason to them that, rightly or wrongly, that overcame the R.

The trial court found that the State had articulated good, clear, and sufficient reasons for the strikes it made. Further, the trial court found that none of the venire members were excluded for racially motivated reasons. Reviewing the record including the juror information cards, we find that the trial court's

ruling is supported by the record and is not clearly erroneous. *Hernandez v. New York,* supra; *Vargas v. State,* supra. The point of error is overruled.

■ Next, appellant argues that he "suffered a violation of his right to effective assistance of counsel when the trial judge did not permit individual questioning of potential 'problem' jurors by defense counsel." The record reflects that, after the attorneys had questioned the venire panels, the trial court questioned individually those venire members whom the attorneys had challenged for cause. Appellant complains that his time for voir dire was limited. Appellant argues that this procedure was reversible error. We disagree.

The record filed in this court of the voir dire is incomplete. The docket sheets indicate that a 74–member jury panel was summoned on April 14, 1988. Voir dire began at 10:35 a.m. After a lunch break, voir dire resumed at 2:00 p.m. Appellant's motion to quash the panel was granted, and the panel was released. The statement of facts from the April 14, 1988, proceedings has not been filed in this court by appellant.

Voir dire commenced again on April 18 and lasted through April 20. The three volumes of the statement of facts on voir dire reflect that two separate panels were called and questioned. The total number of venire persons was 109. Both the prosecution and the defense were allowed to question the panels. After the attorneys had indicated which members they felt could be challenged for cause, the trial court individually interviewed those members and addressed the areas which the attorneys had stated were the grounds for their challenges for cause.

The record does not support the contentions that voir dire was unduly restricted, that appellant's right to effective assistance of counsel was violated, or that reversible error occurred. The trial court did not abuse its discretion. *Guerra v. State,* 771 S.W.2d 453 (Tex.Cr.App.1988), *cert. den'd,* 492 U.S. 925, 109 S.Ct. 3260, 106 L.Ed.2d 606 (1989). The fifteenth point is overruled.

■ Appellant's final four points address alleged errors at the punishment phase of the trial. In his sixteenth point, appellant contends that the trial court erred in refusing to instruct the jury that the law of parties was not applicable. Specifically, appellant had requested an instruction that the jury could not consider the conduct of Lemell in assessing appellant's punishment.

After hearing the evidence at the punishment phase of the trial, the jury was given two separate charges: one for appellant's punishment and one for Lemell's punishment. Appellant's charge contained specific instructions that the jury consider neither Lemell's confession nor any testimony regarding Lemell having been previously convicted in assessing appellant's punishment. The trial court did not err in refusing the instruction. *Belyeu v. State,* 791 S.W.2d 66 (Tex.Cr.App.1989).

Moreover, we note that the punishments assessed by the jury indicate that the jury focused on each individual defendant's role in the offense. Appellant's punishment was assessed at confinement for the maximum term, life. Lemell's punishment was assessed at confinement for 65 years and a $5,000 fine. The sixteenth point is overruled.

■ At the punishment phase, appellant attempted to introduce the testimony of Dr. Jerome Banks Brown, a clinical psychologist, and the testimony of Dr. James W. Marquardt, a sociologist and professor at Sam Houston State University. The trial court sustained the State's objections to both witnesses, and appellant perfected bills of exception.

Dr. Brown testified that he had performed a psychological evaluation and clinical interviews with appellant. Appellant was always cooperative with Dr. Brown, and the information he provided in the five interviews was consistent. Dr. Brown testified that appellant was "sorry that it happened," that appellant was "pressured" into the shooting, and that appellant would benefit from being placed on probation. Dr. Brown testified that his:

[P]rediction would be that [appellant] would carry out the probationary requirements just as he carried out his responsibilities at T.D.C. more or less in a con-

forming and designed to please authority figures type of fashion.

Dr. Marquardt testified that he was involved in studying the institutional behavior of inmates convicted of violent behavior. Based on his studies and on appellant's exemplary prison record, Dr. Marquardt believed that appellant would not be a continuing threat to society.

On appeal, appellant contends that TEX.PENAL CODE ANN. § 1.02(1)(B) and (C) (Vernon 1974) provides that the objectives of the Penal Code include the rehabilitation of those convicted of penal violations and punishment as necessary to prevent the reoccurrence of criminal behavior and that the proffered testimony was admissible to support these objectives. Appellant argues that this testimony was admissible to demonstrate appellant's remorse and his ability to follow the terms and conditions of probation.

TEX.R.CRIM.EVID. 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

TEX.R.CRIM.EVID. 403 states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

The admissibility of evidence under these two rules is determined by the trial court, and that determination will not be reversed on appeal unless the trial court abused its discretion. *Ortiz v. State*, 834 S.W.2d 343 (Tex.Cr.App.1992). See also *Montgomery v. State*, 810 S.W.2d 372 (Tex.Cr.App.1991).

The record does not establish that the trial court abused its discretion in concluding that a "battle of experts" would more likely perplex than assist the jury. Moreover, testimony of appellant's changed behavior and exemplary prison record was given by appellant's wife, a prison counselor, and the prison laundry manager who supervised appellant. Appellant has not established that the trial court abused its discretion. The seventeenth and eighteenth points of error are overruled.

Following his arrest, appellant was taken to the hospital in Houston with a leg or ankle injury. Appellant escaped and was apprehended about five days later in Lake Charles, Louisiana. At the guilt/innocence phase of the trial, the jury was instructed to consider the evidence of flight solely for the purpose of avoiding prosecution for this offense.

In his final point of error, appellant argues that a similar limiting instruction should have been included in the charge on punishment. Appellant contends that the trial court committed reversible error when it overruled his requested limiting instruction. We disagree. The trial court properly charged the jury on punishment. See TEX.CODE CRIM.PRO. ANN. art. 37.07 (Vernon 1981 & Supp.1993). The nineteenth point of error is overruled.

The judgment of the trial court is affirmed.

*On Appellant's Motion for Rehearing*

Appellant argues that *State v. Yount*, 853 S.W.2d 6 (Tex.Cr.App.1993), cited in our original opinion, supports his contention that his limitations challenge was timely. We disagree.

In *Yount*, the defendant was indicted for three separate offenses of involuntary manslaughter. Upon the defendant's request, the jury was charged not only on involuntary manslaughter but also the lesser included offense of driving while intoxicated. Defendant was convicted of the lesser included offense which was barred by the statute of limitations.

In the present case, appellant was indicted in a three-count indictment for the murder of Wing K. Lew, the aggravated robbery of Wing K. Lew by placing Yit Oi Lew in fear of imminent bodily injury and death, and the aggravated robbery of Wing K. Lew by shooting Wing K. Lew with a firearm. The indictment was presented on January 8, 1988. The offenses were alleged to have occurred on January 29, 1982. Therefore, the indict-

ment showed on its face that the alleged aggravated robbery counts were barred by the five-year statute of limitations. TEX. CODE CRIM.PRO.ANN. art. 12.01 (Vernon Supp.1994).

In *Yount*, the defendant had no way of knowing that he would receive his requested charge on the lesser included offense until the actual charge was given. The defendant could not object before trial. Therefore, the defendant's objection in *Yount* was timely.

The defect in appellant's indictment, that the count was barred by the statute of limitations, was apparent on the face of the indictment. This defect must be raised before trial. Appellant's limitations challenge, made after the jury retired to deliberate, was not timely.

Appellant's motion for rehearing is overruled.

February 3, 1994