Brian Lee TIDROW, Appellant,

v.

The STATE of Texas, State.

No. 2–94–236–CR.

Court of Appeals of Texas,
Fort Worth.

Feb. 1, 1996.

D. Keith Orsburn, Denton, for appellant.

Bruce Isaacks, Criminal District Attorney; Kathleen A. Walsh, Heidi Akins, and Sharone McGahee, Assistant District Attorneys, Denton, for appellee.

Before LIVINGSTON, BRIGHAM and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

A jury convicted Brian Lee Tidrow of capital murder, and he was given an automatic life sentence to the Institutional Division of the Texas Department of Criminal Justice. In his first five points of error, Tidrow protests that his conviction was based on inadmissible hearsay and evidence that was insufficient, irrelevant and prejudicial. Separate points challenge venue and denial of his motion to quash the venire panel. We affirm.

About 7:00 a.m. on August 30, 1993, a Lewisville, Texas, police officer was assigned to interview Sylvia Roy, after she reported her husband, Windell Roy, missing. Later that morning, Windell's dead body was found beside a road, his hands bound with telephone cord. An autopsy by Tarrant County Deputy Medical Examiner Gary Sisler concluded Roy had internal injuries and blunt force trauma to the mouth and head, consistent with being knocked unconscious. The doctor found death was caused by strangulation.

Eventually, Sylvia, the Roys' son, James, and Tidrow were indicted for capital murder. The trial court admitted as evidence Tidrow's written statement to the police. *See* TEX. CODE CRIM.PROC.ANN. arts. 38.21 (Vernon 1979), 38.22 (Vernon 1979 & Supp.1996). His statement was that he accepted James' offer of $600 to knock Windell Roy unconscious, so James could kill him; that they went to Windell's mobile home, where Tidrow used his gloved fists to beat Windell unconscious; then Tidrow sat on Windell's hands and held his legs, while son James held a pillow on Windell's face for twenty minutes, until Windell stopped breathing; they tied Windell's hands with a telephone cord, wrapped the body in a blanket, put it in the back of a pickup truck, then drove to a spot where they dumped the body in a ditch; then threw the blanket in a dumpster and met Sylvia Roy; told her they had killed Windell, and Sylvia told Tidrow and James she would pay them when she collected her check from Windell's life insurance.

■ The common law *corpus delicti* rule is that a criminal conviction cannot be based on the accused's extrajudicial confession unless it is corroborated by independent evidence tending to establish that someone committed the crime. *Fisher v. State*, 851 S.W.2d 298, 302–03 (Tex.Crim.App.1993); *Roy v. State*, 891 S.W.2d 315, 321 (Tex.App.—Fort Worth 1994, no pet.).

■ Over Tidrow's objection, the court later admitted in evidence the written statements of James and Sylvia to the police which are consistent with Tidrow's statement. On appeal, Tidrow does not complain of his own statement's admission into evidence. His first point of error is that the statements of James and Sylvia are inadmis-

sible hearsay and violate his constitutional right to confront the witnesses against him.

■ Self-inculpating hearsay statements by a co-defendant which also inculpate an accused may be admissible against the accused where the statement was sufficiently against the declarant's penal interest that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. *Williamson v. U.S.*, — U.S. —, — – —, 114 S.Ct. 2431, 2436–37, 129 L.Ed.2d 476, 484–86 (1994); *Cofield v. State*, 891 S.W.2d 952, 956 (Tex.Crim. App.1994); *McFarland v. State*, 845 S.W.2d 824, 836 (Tex.Crim.App.1992), *cert. denied*, — U.S. —, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). The circumstances of each case must determine whether a declarant's out-of-court statement is against his or her interest. *Williamson*, — U.S. at — – —, 114 S.Ct. at 2436–37, 129 L.Ed.2d at 484–86; *Cofield*, 891 S.W.2d at 956.

■ The trial court admitted Sylvia's and James' out-of-court statements as exceptions to the hearsay rule. *See* Tex.R.Crim. Evid. 803(24). The court ruled:

> The Court does find there could be corroborating circumstances to make the documents trustworthy. I think the corpus delicti of the crime has been shown. I think the circumstances of each confession, in fact, corroborates the other confession, the other statement. Additionally, I think the circumstances as testified by Stacy Roy corroborate both statements as well.

Tidrow argues that the State did not carry its burden of identifying any corroborating circumstances aside from the out-of-court statements of co-defendants Sylvia and James. In offering the statements, the State has the burden to justify their admissibility by evidence of corroborating circumstances that clearly indicate the statements' trustworthiness. *Davis v. State*, 872 S.W.2d 743, 749 (Tex.Crim.App.1994). The test for gauging the existence of such corroborating circumstances is not an easy one, and the trial court must not indulge in weighing the credibility of the in-court witness. *Id.* Although the test is not exact, factors a court may consider include (1) whether the declarant's guilt is inconsistent with that of the accused,

(2) whether the declarant was so situated that he might have committed the crime, (3) the declaration's timing and spontaneity, (4) the relationship between the declarant and the person to whom the declaration is made, and (5) the existence of independent corroborating facts. *Id.* Not all factors apply in every case. *Id.*

One of the State's witnesses was Rudolpho Yoyo Ambress, then an inmate in the Denton County jail, convicted of crimes unrelated to this case and awaiting transfer to state prison. He and Tidrow had been inmates in the jail's "holding tank" at the same time. Ambress testified:

> [PROSECUTOR:] Specifically, did you have a conversation about Mr. Windell Roy being killed?
>
> [AMBRESS:] Yes.
>
> [PROSECUTOR:] Yoyo, I just want to take it step by step. Why don't you tell the jury the first thing that Mr. Tidrow told you about his knowledge of the murder of Windell Roy?
>
> [AMBRESS:] I come up walking, and him and another inmate Tony Kurtman were having a conversation. . . .
>
> . . . .
>
> [PROSECUTOR:] What happened next, Mr. Ambress?
>
> [AMBRESS:] I asked him about the murder. And he had told me that him and James Roy had went over to the trailer in Lewisville.
>
> [PROSECUTOR:] What else did he say?
>
> [AMBRESS:] And they entered and James started hitting his dad.
>
> . . . .
>
> [PROSECUTOR:] Did he say anything about how Mr. Tidrow—excuse me, Mr. Roy was killed?
>
> [AMBRESS:] Yes. He said that James had grabbed a pillow and used a pillow after he gave him a couple of blows.
>
> [PROSECUTOR:] Did he say he was in there when James got the pillow?
>
> [AMBRESS:] He said he come back in.

[PROSECUTOR:] And what else did he tell you, that you remember?

[AMBRESS:] After they had killed him, that they had left and dumped his body on the side of the road.

. . . .

[PROSECUTOR:] Did Mr. Tidrow tell you anything about why he did this?

[AMBRESS:] Because James had offered him some money.

[PROSECUTOR:] Did he say how much he had offered him?

[AMBRESS:] No.

[PROSECUTOR:] Did he say what James had offered the money for?

[AMBRESS:] To kill his dad.

[PROSECUTOR:] Whose dad?

[AMBRESS:] James' dad.

[PROSECUTOR:] Do you know James' last name?

[AMBRESS:] Roy.

[PROSECUTOR:] Did he say where they went after they killed Mr. Roy?

[AMBRESS:] That Sylvia drove them to Fort Worth.

[PROSECUTOR:] Did he say whose Sylvia's last name was?

[AMBRESS:] Sylvia Roy.

Another witness for the prosecution was Stacy Roy, sister of James. She lived with her parents in the mobile home where the murder took place. At 6:00 or 6:30 p.m. on the night of the murder, she left her father alone in their home and went outside to be with friends in the mobile home park. About 9:00 p.m., while walking with friends near the Roy home, she saw James and another man behind it. About 9:30 p.m., she saw them leave the area in her father's pickup truck. Later, she and a friend entered the Roys' home. Her father and mother were not there, and her father's pillow and blanket were gone. She became scared and went to her friend's mobile home, where she stayed for several hours.

We hold that the testimony of Ambress and Stacy, coupled with the finding of Windell's body in a roadside ditch with hands tied by telephone cord, provide independent facts which circumstantially corroborate Tidrow's own confession to the murder and the manner in which it was done. The respective out-of-court statements of James and Sylvia are self-inculpatory and each is sufficiently against the declarant's penal interest that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. In James' out-of-court statement, he said he put the pillow over his father's face after Tidrow's fist-assault, and:

> Me and Brian then took my dad's body, which I don't know when he actually died, and put it in the back of the truck and we left. We put the body on the side of the road . . . After that we went to meet my mother . . . She told us that we would get our money when the insurance check got there. . . .

Sylvia's out-of-court statement was, in part,

> I know I am very guilty of this crime . . . I had originally thought I could do it myself, but was unable. . . . I approached my son, James. . . . So I told him he could have the truck along with some money from insurance. . . . Windell started having memory losses. . . . He said it would be better if he was dead. . . . That is when the idea started in my mind. . . . The arrangement to James, was to James and no one else. He was to take care of paying the other person, Brian. . . . And I wish to God, we had never carried it out. . . .

█ The statements of James and Sylvia are consistent with Tidrow's confession, and each statement is clearly self-inculpatory. None attempts to exonerate its declarant or the other two persons. The three statements combine to tell how and why the murder was planned and carried out by the declarants. There is no harm to an accused when a non-testifying co-defendant's confession is admitted in evidence which conforms to the accused's own confession in evidence. *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Osteen v. State,* 642 S.W.2d 169, 170–71 (Tex.Crim.App.1982); *Proctor v. State,* 871 S.W.2d 225, 230 (Tex. App.—Eastland 1993), *rev'd on other grounds,* 915 S.W.2d 490.

We hold that the State met its burden by presenting the trial court with corroborating circumstances sufficiently convincing to clearly indicate the trustworthiness of James' and Sylvia's statements and make them admissible as a proper hearsay exception under rule 803(24), of the Texas Rules of Criminal Evidence.

■ In his first point of error, Tidrow also argues that even if those statements were admissible under that rule, their admission in evidence denied Tidrow's constitutional right to confront and cross-examine the two declarants. *See* U.S. CONST. amend. VI and TEX. CONST. art. I, § 19. Because we have already held that the out-of-court statements are self-inculpatory, trustworthy and admissible as exceptions to the hearsay rule, their admission into evidence did not violate Tidrow's right of confrontation. *Williamson,* — U.S. at ——, 114 S.Ct. at 2437, 129 L.Ed.2d at 486; *Lee v. Illinois,* 476 U.S. 530, 542, 106 S.Ct. 2056, 2063, 90 L.Ed.2d 514, 527 (1986). The first point of error is overruled.

Points of error two and three challenge the sufficiency of evidence. In reviewing the sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict. *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App. 1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Emery v. State,* 881 S.W.2d 702, 705 (Tex.Crim.App.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995). This standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the State's evidence or believe that the defense's evidence outweighs the State's evidence. *See Matson v. State,* 819 S.W.2d 839, 846 (Tex.

Crim.App.1991); *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App.1984), *cert. denied,* 469 U.S. 892 (1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson,* 819 S.W.2d at 846. The standard for review is the same for direct and circumstantial evidence cases. *Geesa v. State,* 820 S.W.2d 154, 158–62 (Tex.Crim.App.1991).

■ Point of error number two challenges the sufficiency of evidence to support the indictment that the victim was strangled by ligature with an object or objects unknown to the grand jury.

Dr. Gary Sisler testified that from his autopsy of Windell Roy, he found the cause of death to be "ligature strangulation," but *could not rule out* the possibility that the victim was suffocated after being strangled. He *estimated* the ligature was a "thin cordlike material," but testified he *could not be sure,* because nothing was around the victim's neck when the body was received for autopsy. Sisler approximated the width of the ligature marks on the victim's neck to be the width of the cord with which his wrists were tied, but there were no fingerprints on the cord.

Tidrow says that Sisler's testimony about the type of instrument used to cause Windell's death required the State to show what instrument was used or, alternatively, prove the grand jury did not know the manner or means of inflicting the injury after exercising due diligence to learn the manner or means. *See Matson,* 819 S.W.2d at 847; *Underwood v. State,* 853 S.W.2d 858, 860 (Tex.App.— Fort Worth 1993, no pet.).

The indictment alleges that Tidrow did,

then and there intentionally and knowingly cause the death of ... Windell Roy, by strangling ... by manual compression and by strangling ... by ligature with an object or objects unknown to the Grand Jury, and by smothering ... with a pillow on the face of ... Windell Roy, and by a combination of both strangling and smothering [him] for the promise of remuneration from James Michael Roy....

■ When an indictment alleges that the manner or means used to inflict an injury is unknown and the evidence at trial does not show what type of object was used, a *prima facie* showing exists that the object was unknown to the grand jury. *Matson*, 819 S.W.2d at 847. It is only when the trial evidence shows what object was used that the State must prove the grand jury unsuccessfully used due diligence to learn the manner or means. *Id.*

Dr. Sisler's opinions were that death could have been caused by ligature strangulation by itself *or combined with* manual strangulation, and that he *could not rule out* suffocation or smothering. On this evidence, we hold there was a *prima facie* showing that the object used on the victim was unknown to the grand jury when it indicted Tidrow. The second point of error is overruled.

■ The third point of error challenges the sufficiency of evidence to independently corroborate the promise of remuneration alleged in the indictment.

Tidrow concedes that his extrajudicial confession is sufficient to establish his identity as the alleged perpetrator of the crime. *Gribble v. State*, 808 S.W.2d 65, 70 (Tex. Crim.App.1990), *cert. denied*, 501 U.S. 1232, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991). But he argues that his conviction cannot be based on his extrajudicial confession unless it is corroborated by independent evidence tending to establish the *corpus delicti*, which is that Tidrow murdered Roy for a promise of remuneration. TEX.PENAL CODE ANN. §§ 19.02(b), 19.03(a)(3) (Vernon 1994); TEX. CODE CRIM.PROC.ANN. art. 38.14 (Vernon 1979); *Fisher*, 851 S.W.2d at 302–03.

The allegation that Tidrow was promised remuneration is the element that elevates the indicted offense from murder to capital murder. *See* TEX. PENAL CODE ANN. § 19.03(a)(3) (Vernon 1994). Tidrow contends the only evidence of remuneration that is independent of his own confession is the testimony of jail inmate Ambress and evidence about Windell Roy's life insurance policy. The State counters that the out-of-court statements of Sylvia and James must be considered also.

■ One who participates with another in an offense before, during, or after the commission of that crime is an accomplice. *Skelton v. State*, 626 S.W.2d 589, 592 (Tex. App.—Texarkana 1981, no pet.). Tidrow, Sylvia and James were accomplices, and the general rule is that an accused may not be convicted on accomplice testimony *alone*, unless there is other evidence that corroborates the accomplice testimony and tends to connect the accused with the commission of the offense charged. *Cockrum v. State*, 758 S.W.2d 577, 581 (Tex.Crim.App.1988); *Paulus v. State*, 633 S.W.2d 827, 843 (Tex.Crim. App. [Panel Op.] 1981); *O'Neal v. State*, 421 S.W.2d 391, 393–94 (Tex.Crim.App.1967) (op. on reh'g).

■ An exception to the general rule is that the testimony of an accomplice witness in a capital murder case need not be corroborated on the element, such as remuneration, which elevated the murder to a capital murder. *Anderson v. State*, 717 S.W.2d 622, 631 (Tex.Crim.App.1986); *Holladay v. State*, 709 S.W.2d 194, 199 (Tex.Crim.App.1986). The third point of error is overruled.

■ Point of error number four protests the admission of Windell Roy's $250,000 life insurance policy into evidence. Tidrow says the policy was both irrelevant and inadmissible hearsay, because it was obtained approximately a year before the alleged conspiracy to murder Windell.

Insurance agent Nancy Kennedy testified that she met with Sylvia Roy in October 1992, to arrange for issuance of a $250,000 policy to insure Windell's life. As we have already noted, the extrajudicial statements of Sylvia, James and Tidrow make clear that the remuneration to Tidrow for his role in the murder was to come from insurance proceeds. We hold the evidence of the insurance policy was relevant. *See Mayes v. State*, 816 S.W.2d 79, 84 (Tex.Crim.App. 1991); *Montgomery v. State*, 810 S.W.2d 372, 376 (Tex.Crim.App.1990) (op. on reh'g).

■ Part of the fourth point of error is that the $250,000 insurance policy is inadmissible hearsay and should have been excluded from evidence. Other than mentioning that this was one ground for his objection to the

policy's admissibility at trial, Tidrow does not discuss any facts or cite any authorities to maintain his hearsay argument under point number four. The State's brief does not address Tidrow's hearsay contention, other than noting that Tidrow's brief presents no argument on it. Rule 74(f) of the Texas Rules of Appellate Procedure requires that a brief include "such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue." TEX. R.APP.P. 74(f). An appellant's omission of those ingredients has been held a waiver of the related point. *Rodriguez v. State*, 779 S.W.2d 884, 886 (Tex.App.—Corpus Christi 1989), *aff'd*, 808 S.W.2d 496 (Tex.Crim.App. 1991).

Nevertheless, because Tidrow's brief mentions the statement of facts page which contains his hearsay objection, we will accept that bare reference as substantial compliance with rule 74(d) of the Texas Rules of Appellate Procedure. *See Davis v. State*, 817 S.W.2d 345, 346 (Tex.Crim.App.1991), holding that courts of appeals ought not dismiss a point of error out of hand when there is substantial compliance with the rules. *Id.*

▮▮▮ Insurance agent Nancy Kennedy testified that she was the custodian of the business records that included the $250,000 policy insuring Windell Roy's life. Her testimony was that, as a normal and regular practice of her business activity, she met with Sylvia Roy, took the application for the insurance, issued the policy, had personal knowledge of that transaction, and retained possession of the policy with Sylvia's knowledge. We conclude that the life insurance policy is an integral part of the records of a regularly conducted business activity, and that Nancy Kennedy testified as custodian of those records. There is no evidence to indicate a lack of trustworthiness about the business records, and we hold the $250,000 life insurance policy was admissible as an exception to the hearsay rule, under rule 803(6) of the Texas Rules of Criminal Evidence.

The fourth point of error is overruled.

▮▮▮ Point of error number five is that a photograph of the victim's skull was so gruesome that its prejudicial effect clearly outweighed its probative value. The size of the color photograph, State's exhibit 13, is approximately 8″ × 10″, made by Dr. Sisler during the autopsy, and Tidrow argues that its purpose was to inflame the jurors' minds against him.

▮▮▮ We are limited to determining whether the danger of unfair prejudice substantially outweighs the photo's probative value. TEX.R.CRIM.EVID. 403; *Barnes v. State*, 876 S.W.2d 316, 326 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994). Among the factors a court may consider are the number of photographs offered, their detail and size, whether in color or black and white, whether close-up, and whether the body depicted is clothed or naked. *Id.* at 326. A court also may consider the availability of other means of proof and circumstances unique to the case. *Id.* A photograph should be excluded if it is so horrifying or appalling that a juror of normal sensitivity would necessarily encounter difficulty rationally deciding the critical issues of the case after viewing it. *Fuller v. State*, 829 S.W.2d 191, 206 (Tex.Crim.App.1992), *cert. denied*, 508 U.S. 941, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993).

The photograph was offered with Dr. Sisler's testimony about the autopsy of the victim, to support the doctor's finding of blunt force trauma on the outside of the head, which corresponded to the internal hemorrhaging shown in the photograph. The trial court found the photograph was not enhanced and was evidence consistent with the contention that Windell was attacked with fists. We agree. We conclude the photo was relevant evidence of circumstances material to Windell's death. It is consistent with the out-of-court statements of Tidrow and James Roy and the testimony of Rudolpho Yoyo Ambress, which came into evidence later.

We hold that the trial court properly admitted the photograph, and that it is not so horrifying or appalling that a juror of normal sensitivity would necessarily have difficulty rationally deciding the critical issues of the case after viewing it. Point of error five is overruled.

■ The sixth point of error challenges the trial court's refusal to grant a change of venue based on pre-trial publicity. For us to find the trial court's refusal to change venue was an abuse of discretion, Tidrow must show that publicity about the case was pervasive and inflammatory and created such prejudice in the community that the likelihood of a fair trial by an impartial jury is doubtful. *Etheridge v. State,* 903 S.W.2d 1, 6 (Tex. Crim.App.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 314, 133 L.Ed.2d 217 (1995). Tidrow bears a heavy burden of proof. *Nethery v. State,* 692 S.W.2d 686, 694 (Tex.Crim. App.1985), *cert. denied,* 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986).

■ It is clear that extensive knowledge in the community about the crime or Tidrow will not render his trial unconstitutional, unless he can demonstrate an actual identifiable prejudice of members of the jury, attributable to the pre-trial publicity. *Etheridge,* 903 S.W.2d at 6. When considering a request to change venue, the question for jurors and the trial court is whether the pre-trial publicity has permeated the community to such an extent that the prospective jurors' initial opinions cannot be set aside. *Id.*

Before trial, Tidrow filed a motion asserting that he could not receive a fair trial in Denton County. At a hearing, he supported the motion with affidavits of four disinterested citizens and copies of sixteen newspaper articles about this case and/or the trials of Sylvia and James Roy. The trial court took judicial notice of the four affidavits. One affiant is bail bondsman, Eric Fry. He was not a member of the venire, but testified in the venue hearing. He knew of this case from media coverage, but had not talked with anyone who said they could not serve fairly and impartially if seated on the jury for Tidrow's trial. Mr. Fry said he had an open mind and could give the court no specific, identifiable prejudice against Tidrow that would prevent a fair trial. Two other witnesses at the hearing opined that Tidrow could receive a fair trial in Denton County. No others testified.

Tidrow did not establish that the pre-trial publicity permeated the community to such an extent that the venirepersons' initial opin-

ions, if any, could not be set aside, and he has not established that the pre-trial publicity denied him a fair trial. We find no abuse of discretion by the trial court in denying the motion to change venue. Point of error number six is overruled.

■ Point of error number seven is that Tidrow's motion to quash the venire should have been granted because the array was fewer than the number of qualified jurors in the county.

The words *array* and *venire* may be used interchangeably and mean a panel of persons selected for jury duty and from which the jurors are to be chosen. *See* BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 61, 562 (1987). Historically, the names of all prospective jurors in a county have been written or typed on a card at the direction of the county's tax assessor-collector, sheriff, county clerk and district clerk. *See* TEX. GOV'T CODE ANN. §§ 62.001 (Vernon Supp. 1996), 62.002 (Vernon 1988 & Supp.1996). Annually, those names are put into a lockable device known as a *jury wheel,* which is required to "revolve freely on its axle and be constructed of a durable material [and] may be equipped with a motor capable of revolving the wheel in a manner that thoroughly mixes the jury wheel cards." TEX.GOV'T CODE ANN. § 62.003 (Vernon 1988). This annual procedure is known as *reconstitution* of the jury wheel. TEX.GOV'T CODE ANN. § 62.001 (Vernon Supp.1996). In 1985, the legislature enacted section 62.011 of the Texas Government Code, giving counties the option of selecting names of persons for jury service with the aid of electronic or mechanical equipment instead of drawing the names from a jury wheel. Denton County's system is computerized, so the jury wheel statutes do not apply to it. TEX.GOV'T CODE ANN. § 62.011(c) (Vernon 1988).

Tidrow complains that the names of Denton County's 134,978 qualified jurors were randomized in a computer by an out-of-state vendor, then, by agreement of the district clerk in Denton, the array for his trial was only the first 50,000 randomized names. The district clerk testified that the county's computer system could not physically handle

more than 50,000 names at once and, when the first 50,000 were used, the next 50,000 on the randomized list would be loaded into the computer, and so on, until the entire 134,978 names were used if needed.

Tidrow relies on *Vasquez v. State*, 76 Tex. Crim. 37, 172 S.W. 225 (1914) as authority for the principle that an intentional omission of names from a jury wheel is a ground for quashing the venire. In *Vasquez*, there was no allegation that qualified names were omitted intentionally or that the appellant was injured by the omission of names in the jury wheel. Nevertheless, the court said in part:

> As it is a question of first impression, we have given it careful and thoughtful consideration. There is no doubt it was the intention of the Legislature to require of the officers named that they place in the jury wheel the names of all persons in the county known to them to be qualified jurors, and if it appeared from the record that they had intentionally omitted to place in the wheel the name of any person known by them to be a qualified juror, it would be ground to quash the venire, even though the record did not go so far as to show injury to appellant.

*Id.* at 227.

Since 1914, the law has changed, and the method of challenging an array is prescribed now by article 35.07 of the Texas Code of Criminal Procedure:

> Each party may challenge the array *only on the ground that the officer summoning the jury has wilfully summoned jurors with a view to securing a conviction or an acquittal. All such challenges must be in writing setting forth distinctly the grounds of such challenge. When made by the defendant, it must be supported by his affidavit or the affidavit of any credible person.* When such challenge is made, the judge shall hear evidence and decide without delay whether or not the challenge shall be sustained.

TEX.CODE CRIM.PROC.ANN. art. 35.07 (Vernon 1989) (emphasis added).

Tidrow's motion to quash the venire panel only alleged his "belief that Section 62.001, et seq. of Vernon's Annotated Government Code has not been complied with in the reconstitution of the jury wheel." The motion did not allege the statutory grounds for challenging the array. It was not supported by affidavit and does not comply with article 35.07.

To successfully challenge a criminal conviction based upon noncompliance with jury selection procedures, Tidrow must establish that the noncompliance compromised the fairness of his trial. *Cooks v. State*, 844 S.W.2d 697, 726–27 (Tex.Crim.App.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993); *Lewis v. State*, 815 S.W.2d 560, 563 (Tex.Crim.App.1991), *cert. denied*, 503 U.S. 920, 112 S.Ct. 1296, 117 L.Ed.2d 519 (1992). Tidrow has not shown that there was any effort by those preparing the list to place any name ahead of another or that the manner in which the venire list was drawn resulted in harm to him. The district clerk's testimony makes plain that the names in the array were drawn at random from all of the 134,978 names of qualified Denton County jurors.

Because Tidrow has not demonstrated that the county's procedures for summoning the venire caused him harm or an unfair trial, we find no reversible error in those procedures or the trial court's denial of the motion to quash. Point of error number seven is overruled.

The judgment of the trial court is affirmed.