Becker v. State
















COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
CHARLES WILLIAM THOMASON,               )                  No. 08-02-00482-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  171st District Court
)
THE STATE OF TEXAS,                                   )                  of El Paso County, Texas
)
                                    Appellee.                          )                  (TC# 980D04110)

O P I N I O N

            Charles William Thomason appeals his conviction for murder. A jury found Appellant guilty
and the court assessed his punishment at life imprisonment.


 We affirm.
FACTUAL SUMMARY
            On April 19, 1998, the body of Robert Valles was found in a room at the Ace Motel on Dyer
Street in El Paso. Valles was clothed in only underwear and socks, and his hands and feet were
bound with black electrical tape. Investigating officers found various objects scattered around the
floor, including a wallet containing a $20 bill, a driver’s license, a pair of blue jeans, a pair of shoes,
and eyeglasses. Valles’ face was covered in blood and a bloody towel and shoe print were found
near his head. Officers also found blood spatter on the mattress and what appeared to be blood in
the bathroom sink, although it had been diluted with water. 
            Dr. Juan Contin, the medical examiner, determined that Valles had suffered blunt force
trauma to the face and scalp causing a broken jaw and nose, and he had been strangled. The cause
of death was asphyxia due to compression of the neck with a hard object such as a hard book or a
piece of plastic rather than manual strangulation. He also found multiple contusions and abrasions
on Valles’ body as well as rug burns on his knees and elbows. There was no evidence of sexual
assault. Dr. Contin believed that the bruises on Valles’ back were caused by someone stepping on
his neck or shoulder while he was on the floor.
            On the evening of April 18, 1998, Nonato (Gino) Sanchez saw Appellant at the Old
Plantation, a gay bar in downtown El Paso. Appellant had “dishwater blonde” hair and looked dirty. 
More descriptively, Sanchez said Appellant looked “like a carnival worker.” Appellant approached
Sanchez, who was wearing several diamond rings, and asked him if he wanted to have a good time. 
Sanchez rejected Appellant’s offer because he believed Appellant was not really interested in him
but only interested in “pulling a trick.” Later in the evening, Sanchez left the Old Plantation and
walked to another gay bar, the San Antonio Mining Company, which was smaller, quieter, and
attracted an older crowd. A short Caucasian man whom Sanchez had seen with Appellant
approached him and asked if he would buy him a drink. Sanchez agreed so the man would leave him
alone. When he turned around with the shorter man’s drink, he saw him sitting at a table with
Appellant and an older Hispanic man, later identified as Robert Valles. As Sanchez took the drink
to their table, Valles introduced himself as Robert and asked Sanchez to sit with them. Sanchez sat
and talked with them for about twenty minutes. Appellant and Valles sat close and talked while
holding hands but Sanchez could not hear their conversation. After a while, Valles bought drinks
for everyone at the table except Sanchez. When Valles paid for the drinks, Sanchez saw that he had
several more bills in his wallet but he could not see the denominations. He also observed Appellant
looking at Valles’ wallet and then glancing at the shorter man. 
            When Appellant and Valles got up to leave, Appellant motioned for the shorter man to join
them. It appeared to Sanchez that Appellant was calling the shots. Sanchez also walked outside the
bar and briefly spoke with Valles who told him that they were going to a motel. Appellant told
Sanchez they were going to the Sunset Motel on Dyer Street. Valles, Thomason, and the short man
got into a teal or greenish blue car and left the parking lot. Valles drove while Appellant sat in the
front passenger seat and the short man sat in the back seat behind Appellant. Valles was wearing
taupe dress pants and a matching shirt while Appellant was wearing jeans, white tennis shoes, and
a long-sleeved shirt. 
            On April 21, 1998, only two days after Valles’ body was found at the Sunset Motel, his car
was pulled from a lake in Fort Bend County outside of Houston. The keys were in the ignition and
still in the “on” position. There were no signs of forced entry into the vehicle. On the driver’s side
of the hood, investigators found a partial palm print which matched the known print of Appellant. 
            Appellant was arrested in Fort Bend County in April of 1998. Detective Brian Wall of the
Fort Bend County Sheriff’s Department saw Appellant on April 23, 1998 and noted that he had jet
black hair which appeared to have been dyed. Appellant also had cuts on the knuckles of both hands. 
Detective Wall could not guess the age of the cuts but he noted that they were not healed. 
            The bloodstained jeans found in the motel room were examined by a blood spatter expert,
Chris McGill of the El Paso Police Department. McGill found medium velocity blood spatter and
blood smear patterns on the jeans, indicating that the person who wore the jeans had been in close
proximity to the source of the blood. He also concluded that the spatter stains on the jeans and
elsewhere in the motel room had been caused by medium force blunt trauma being applied to an
exposed bloody area. A blood stain found inside the right front pocket of the jeans was consistent
with someone sticking his bloody hand in the pocket. A DNA expert determined that the alleles in
Valles’ blood matched those found in the bloodstain on the outside of the jeans. The alleles found
in Valles’ blood occur in only 1 out of 10,000 Hispanic people. The alleles identified in the blood
found inside the pocket matched the alleles in Appellant’s blood. Those alleles occur in 1 of 55
Caucasians.
            A grand jury indicted Appellant for Valles’ murder. The indictment alleged in paragraph A
that Appellant intentionally and knowingly caused Valles’ death by asphyxiation due to compression
of the neck with an object, the exact nature of which was unknown to the grand jury. Paragraph B
charged that Appellant, with intent to cause serious bodily injury to Valles, committed an act clearly
dangerous to human life by compressing Valles’ neck with an object unknown to the grand jury. The
jury found Appellant guilty of murder as alleged in Paragraph A of the indictment.
SUFFICIENCY OF THE EVIDENCE
            In his first two points of error, Appellant challenges the legal and factual sufficiency of the
evidence to support his conviction. He attacks the State’s proof of identity and further argues that
the State failed to prove that the object used to cause the victim’s death was unknown to the grand
jury.
Standards of Review
            In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must
review all the evidence, both State and defense, in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991). This familiar
standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts.
Jackson, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. The jury is entitled to draw
reasonable inferences from the evidence. Benavides v. State, 763 S.W.2d 587, 588-89
(Tex.App.--Corpus Christi 1988, pet. ref’d). The jury may use common sense and apply common
knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to
the inferences that may reasonably be drawn from the evidence. Griffith v. State, 976 S.W.2d 686,
690 (Tex.App.--Tyler 1997, pet. ref’d). We do not resolve any conflict of fact or assign credibility
to the witnesses, as it was the function of the trier of fact to do so. See Adelman v. State, 828 S.W.2d
418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991). 
Instead, our duty is only to determine if both the explicit and implicit findings of the trier of fact are
rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict. 
Adelman, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor
of the verdict. Matson, 819 S.W.2d at 843. Further, the standard of review is the same for both
direct and circumstantial evidence cases. Geesa, 820 S.W.2d at 158.
            When conducting a factual sufficiency review, we consider all of the evidence, both
admissible and inadmissible, but we do not view it in the light most favorable to the verdict. Clewis
v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996); Levario v. State, 964 S.W.2d 290, 295
(Tex.App.--El Paso 1997, no pet.). We review the evidence weighed by the jury that tends to prove
the existence of the elemental fact in dispute and compare it with the evidence that tends to disprove
that fact. Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); Jones v. State, 944 S.W.2d 642,
647 (Tex.Crim.App. 1996). A defendant challenging the factual sufficiency of the evidence may
allege that the evidence is so weak as to be clearly wrong and manifestly unjust, or in a case where
the defendant has offered contrary evidence, he may argue that the finding of guilt is against the great
weight and preponderance of the evidence. See Johnson, 23 S.W.3d at 11. Although we are
authorized to set aside the fact finder’s determination under either of these two circumstances, our
review must employ appropriate deference and should not intrude upon the fact finder’s role as the
sole judge of the weight and credibility given to any evidence presented at trial. See Johnson, 23
S.W.3d at 7. We are not free to reweigh the evidence and set aside a verdict merely because we feel
that a different result is more reasonable. Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997);
Clewis, 922 S.W.2d at 135.
Identity
            The State’s case was based on circumstantial evidence, and therefore, it must be tested by
its own facts to determine the sufficiency of the evidence. See Rios v. State, 846 S.W.2d 310, 313
(Tex.Crim.App. 1992). As argued by the State, the evidence demonstrates that Appellant had not
only the opportunity but also a motive to kill Valles. From Sanchez’s testimony, the jury could have
concluded that Appellant and the short man were looking for a robbery victim and that when
Sanchez rejected the short man’s invitation, they began focusing on Valles. Appellant suggested
they leave the bar shortly after seeing the money in Valles’ wallet. Valles was last seen leaving the
parking lot of the San Antonio Mining Company in his own vehicle but accompanied by Appellant
and the short man. Appellant told Sanchez they were going to the Sunset Motel on Dyer Street. The
following day, Valles was found dead at the Ace Motel on Dyer and all but $20 had been removed
from his wallet. Valles’ clothes were missing but a pair of jeans like those worn by Appellant the
previous evening were found in the room. The jeans were too large to have been worn by the short
man. The blood found on the outside of the jeans was consistent with the blood of Valles while the
blood found inside the pocket was consistent with Appellant’s blood. The jury could have
reasonably concluded that Appellant was wearing the jeans when he assaulted Valles but removed
them and wore Valles’ clothes when he left. The jury also heard evidence that Valles’ car had been
driven into a lake in Fort Bend County and was pulled out of the lake only two days after the murder. 
Appellant was arrested in Fort Bend County at about the same time. In the few days following the
murder, Appellant had dyed his hair. Based on the circumstantial evidence, a rational trier of fact
could have found beyond a reasonable doubt that Appellant intentionally and knowingly caused the
death of Valles.
            We now turn to Appellant’s argument regarding the factual sufficiency of the evidence to
prove identity. He contends that there is no direct evidence that the jeans found in the motel room
were his. Both Valles and Appellant told Sanchez they were going to a motel room on Dyer Street
that evening. The following day, Valles’ clothes were missing and bloodstained jeans similar to
those worn by Appellant were left behind. The jeans were too large to have been worn by the short
man. Further, Appellant’s blood was found in the pocket of the jeans. This evidence supports a
conclusion that the jeans found in the room belonged to Appellant. Appellant also suggests that his
presence in Fort Bend County at the same time the victim’s car was discovered in a nearby lake is
only coincidental. While coincidence is in the realm of possibility, the jury could have rejected that
notion based on all of the other evidence pointing to Appellant’s involvement in the murder. We
conclude that the evidence is factually sufficient to support the jury’s conclusion that Appellant was
the murderer.
Object Unknown to the Grand Jury
            Appellant also challenges the legal and factual sufficiency of the evidence to prove the
allegation in the indictment that the exact nature and description of the object used to fatally
compress Valles’ neck was unknown to the grand jury. Claiming that there is a variance between
the indictment allegation and the proof at trial, he complains that he was not provided with adequate
notice to prepare his defense. The trial court inexplicably sustained Appellant’s objections when the
State called the deputy foreperson of the grand jury to testify that the murder weapon was in fact
unknown to the grand jury.


 Although the State was prevented from offering evidence to prove this
fact, the error does not render the evidence insufficient.
            When an indictment alleges that the manner or means of inflicting the injury is unknown, the
State has the burden of proving whether the fact or element was unknown. Rodriguez v. State, 32
S.W.3d 921, 924 (Tex.App.--Corpus Christi 2000, no pet.). If the evidence at trial does not establish
the type of weapon used, a prima facie showing is made that the weapon was unknown to the grand
jury. Hicks v. State, 860 S.W.2d 419, 424 (Tex.Crim.App. 1993); Matson v. State, 819 S.W.2d 839,
847 (Tex.Crim.App. 1991). If the evidence at trial shows with certainty what object was used to
inflict the injury, then the State must prove that the weapon was unknown and the grand jury used
due diligence in attempting to ascertain the weapon used. See Hicks, 860 S.W.2d at 424; Rodriguez,
32 S.W.3d at 924. The purpose for this rule is to ensure that a defendant will have adequate notice
of the charge against him and to guard against weakening the adequacy of notice that may be caused
by a variance between the allegation and the proof. See Fagan v. State, 89 S.W.3d 245, 248
(Tex.App.--Texarkana 2002, pet. ref’d).
            The State argues that Appellant’s sufficiency complaints should be rejected because Malik
v. State, 953 S.W.2d 234 (Tex.Crim.App. 1997) and Gollihar v. State, 46 S.W.3d 243
(Tex.Crim.App. 2001)


 overruled the Hicks line of cases. An allegation that an object was in fact
unknown to the grand jury is a non-essential allegation and is disregarded in the hypothetically
correct jury charge. See Rosales v. State, 4 S.W.3d 228, 231 (Tex.Crim.App. 1999), cert. denied,
531 U.S. 1016, 121 S.Ct. 576, 148 L.Ed.2d 493 (2000)(expressly holding that the rule from Hicks
is no longer viable after Malik); see also Fagan, 89 S.W.3d at 248-49; Rose v. State, 76 S.W.3d 573,
574 (Tex.App.--Corpus Christi 2002, no pet.); Richards v. State, 54 S.W.3d 348, 350 (Tex.App.--Houston [1st Dist.] 2001, pet. ref’d). We agree. Further, there is no variance between the indictment
and the proof at trial because the evidence did not show with certainty what object was used to cause
Valles’ death. Dr. Contin testified that he could not determine what object was used to fatally
compress Valles’ neck but could only state that it was something hard and irregular, such as a shoe,
a piece of wood, a hard book, or a piece of plastic. Dr. Contin’s testimony was sufficient to establish
a prima facie showing that the object was unknown to the grand jury and the State was not required
to present additional evidence from a grand juror in support of the allegation. See Matson, 819 at
847-48 (where doctor testified that victim died of strangulation but he could not determine whether
it was manual or by ligature, the evidence was sufficient to prove indictment allegation that cause
of strangulation was “by means to the Grand Jury unknown” without need of further testimony from
grand juror); Tidrow v. State, 916 S.W.2d 623, 629-30 (Tex.App.--Fort Worth 1996, no pet.)(where
pathologist testified that he believed cause of death to be ligature strangulation and he did not know
exact type of ligature but believed that it was a thin, cord-like material, but pathologist also admitted
he was not sure and also believed that victim may have been suffocated after being strangled, court
found evidence sufficient to establish a prima facie showing that object was unknown to grand jury);
see also Williams v. State, 948 S.W.2d 954, 957 (Tex.App.--Waco 1997, pet. ref’d)(where there was
some evidence that a cigarette butt may have been used to start fire but no evidence that it was
definitely used, the evidence was inconclusive as to instrumentality responsible for starting of fire,
and thus, State was not required to prove that grand jury used due diligence in attempting to ascertain
ignition source in arson prosecution in which indictment alleged that defendant started fire in
“manner and means unknown to the Grand Jury”). Appellant’s first and second points of error are
overruled.
INEFFECTIVE ASSISTANCE
            In Point of Error Three, Appellant contends that he was denied the effective assistance of
counsel. The proper standard for determining claims of ineffective assistance under the Sixth
Amendment is the two-step analysis adopted by the United States Supreme Court in Strickland v.
Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Hernandez v. State, 988
S.W.2d 770, 771-72 (Tex.Crim.App. 1999). Under the first prong, the defendant must show that
counsel’s performance was deficient, to the extent that counsel failed to function as the “counsel”
guaranteed by the Sixth Amendment. Jackson v. State, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994).
The defendant must demonstrate that his attorney’s representation fell below an objective standard
of reasonableness under prevailing professional norms. Vasquez v. State, 830 S.W.2d 948, 949
(Tex.Crim.App. 1992). Under the second prong, the defendant must establish that counsel's deficient
performance prejudiced the defense. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at
693; Jackson, 877 S.W.2d at 771. Prejudice is established by a showing that there is a reasonable
probability that but for counsel’s unprofessional errors, the result of the proceeding would have been
different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; Jackson, 877 S.W.2d
at 771; Hernandez v. State, 726 S.W.2d 53, 55 (Tex.Crim.App. 1986). A reasonable probability is
a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694, 104
S.Ct. at 2068, 80 L.Ed.2d at 698; Jackson, 877 S.W.2d at 771. Under the Strickland test, the
appellant bears the burden of proving ineffective assistance by a preponderance of the evidence.
Jackson, 877 S.W.2d at 771; Calderon v. State, 950 S.W.2d 121, 126 (Tex.App.--El Paso 1997, no
pet.).
            When we review a claim of ineffective assistance of trial counsel, we must indulge a strong
presumption that counsel’s conduct falls within the wide range of reasonable, professional assistance
and the appellant must overcome the presumption that the challenged conduct can be considered
sound trial strategy. Jackson, 877 S.W.2d at 771; Calderon, 950 S.W.2d at 126. Under normal
circumstances, the record on direct appeal will not be sufficient to show that counsel’s representation
was so deficient and so lacking in tactical or strategic decision-making as to overcome the
presumption that counsel’s conduct was reasonable and professional. See Mitchell v. State, 68
S.W.3d 640, 642 (Tex.Crim.App. 2002); Thompson v. State, 9 S.W.3d 808, 814 (Tex.Crim.App.
1999). An appellant challenging trial counsel’s performance therefore faces a difficult burden and
“a substantial risk of failure.” See Thompson, 9 S.W.3d at 813.
            Appellant argues that his attorney’s performance was deficient because he (1) did not
properly prepare for trial, (2) did not obtain an independent analysis of the blood and DNA evidence,
(3) did not obtain or present expert testimony to counter the State’s DNA expert witness, (4) did not
know how to properly attack the State’s expert DNA witness, (5) failed to request a continuance until
an independent analysis had been done, and (6) did not argue to the jury that it was only a remote
probability that the bloodstain on the jeans belonged to Appellant. Because Appellant did not raise
these complaints in a motion for new trial, counsel has not been provided with the opportunity to
respond to any of Appellant’s claims of deficient performance and the record is silent with respect
to the basis for counsel’s decisions. Further, the record before us does not support Appellant’s
factual assertions. Under these circumstances, Appellant has failed to rebut the presumption that
counsel’s conduct falls within the wide range of reasonable, professional assistance. Likewise,
Appellant has not rebutted the presumption that counsel’s challenged conduct could be considered
sound trial strategy. Point of Error Three is overruled. Having overruled all points of error, we
affirm the judgment of the trial court.


June 17, 2004                                                              
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Panel No. 4
Barajas, C.J., Larsen, and McClure, JJ.

(Do Not Publish)