# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00176-CR

**Valmy Tyrone Dawson, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT
### NO. CR20,822, HONORABLE EDWARD P. MAGRE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Valmy Tyrone Dawson appeals from his conviction for aggravated robbery. *See* Tex. Pen. Code Ann. § 29.03(a) (West 2003). Appellant waived his right to trial by jury. The court found appellant guilty and assessed punishment at fifty years' confinement in the Texas Department of Criminal Justice-Correctional Institutions Division.[1] We affirm the trial court's judgment.

## Background

On the evening of March 26, 2003, Joyce Lanelle Wallace was visiting Lisa Miles and Jimmy John Baker at their apartment in Cameron. Wallace, her sister Cynthia Baker, Miles, and Jimmy John Baker were drinking beer. Appellant visited the Miles-Baker apartment several times during the course of the evening. Around 11:30 p.m., Wallace and appellant left to purchase more

---

[1] This division was formerly known as the Institutional Division.

beer at a convenience store. Although appellant had no money with him, Wallace had $700 cash in $100 bills with her. One of the $100 bills in her possession had the number "700" written in red ink on it. After purchasing beer, appellant and Wallace purchased some crack cocaine and then drove around drinking beer and smoking crack.

Appellant drove to a secluded area, stopped, forced Wallace out of the car, and pushed her against it. Wallace was not clear on the details of the attack that followed. She remembered lying on the ground with appellant on top of her, pounding her head against the ground. Wallace was unsure if appellant hit her head with an object or against the car, as well as against the ground. Wallace saw appellant open the trunk of his car. Appellant later dropped Wallace off near the Miles-Baker apartment. She told Cynthia Baker, who was still there, that appellant hit her in the head with a pipe. She also told John Donahoo, a Milam County sheriff's deputy, that she thought she had been hit with a metal pipe from the trunk of the car.

Dr. Melvin Kyaw, the emergency room doctor who treated Wallace, stated that she suffered lacerations to the back of her head. Both lacerations were "what is described as being superficial because they didn't go through the whole skull." The lacerations were made by something blunt, as opposed to being made by a knife. Lacerations made by a blunt object have jagged edges, as these lacerations did. The lacerations resulted in extensive bleeding.

Appellant was apprehended the morning of March 27. A search incident to his arrest found four $100.00 bills in his sock. One of the bills had "700" written on it in red ink. Blood was found on the center post of appellant's car on the passenger side. A metal pipe and a rag with blood on it were found in the trunk. DNA testing identified the blood on the center post and the pipe as Wallace's.

2

Deputy Greg Kouba of the Milam County Sheriff's Office testified that he was called to the hospital to investigate the assault. He saw Wallace's lacerations before they were cleaned and stitched. He said that she had so much blood in her hair that it was running down the back of her neck. He said that one laceration appeared larger than the other and "they appeared to be very serious lacerations. They were split open on the back of her head, both of them." He testified that he did not consider the cuts "superficial." He opined that either the pipe or appellant's hands holding and pounding her head against the ground were capable of causing serious bodily injury or death.

In two issues on appeal, appellant asks whether a person can be convicted of aggravated robbery when the evidence fails to show either that a deadly weapon was used or that the victim suffered serious bodily injury, and whether the state was required to show that the grand jury used due diligence in attempting to determine the identity of the weapon.

## Discussion

### *Deadly Weapon*

Appellant contends that the state failed to prove a necessary element of aggravated robbery because it did not prove that appellant either used or exhibited a deadly weapon or that Wallace suffered serious bodily injury. *See* Tex. Pen. Code Ann. § 29.03(a).[2] The indictment

---

[2] (a) A person commits an offense if he commits robbery as defined in Section 29.02 and he:

  (1) causes serious bodily injury to another;

  (2) uses or exhibits a deadly weapon; or

  (3) causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death, if the other person is:

3

charged appellant with commission of aggravated robbery by use or exhibition of a deadly weapon, not by causing serious bodily injury. Accordingly, we analyze the sufficiency of the evidence only to support the use of a deadly weapon.

When reviewing the legal sufficiency of the evidence, we look at all the evidence in the light most favorable to the verdict to determine whether a rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). The trier of fact is entitled to resolve any conflicts in the evidence, to evaluate the credibility of the witnesses, and to determine the weight to be given any particular evidence. *See Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).

In a factual-sufficiency review, the reviewing court "views all the evidence without the prism of 'in the light most favorable to the prosecution,'" and sets aside the verdict only if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Johnson*, 23 S.W.3d at 7; *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). In such a review, the court asks whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is too weak or that the contrary evidence is too strong to rationally support a finding of guilt beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004).

---

(A)  65 years of age or older; or

(B)  a disabled person.

Tex. Pen. Code Ann. § 29.03 (West 2003). Appellant does not contend that the State failed to prove the elements of robbery.

4

Appellant's argument that the State failed to show use of a deadly weapon appears to be based only on the equivocation in Wallace's testimony about whether appellant used the pipe that was found in the car or used his hands to bang her head against the ground and on appellant's conclusion that she did not suffer serious bodily injury.[3] The State, however, does not have to prove that the deadly weapon caused death or serious bodily injury, only that the weapon, in the manner of its use or intended use, was capable of causing death or serious bodily injury. Tex. Pen. Code Ann. § 1.07(a)(17)(B) (West Supp. 2005) (definition of deadly weapon); *see*, *e.g.*, *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). In determining the deadliness of a weapon, the trier of fact may consider all of the facts of a case, including words spoken by the accused. *Blain v. State*, 647 S.W.2d 293 (Tex. Crim. App. 1983); *Williams v. State*, 575 S.W.2d 30, 32 (Tex. Crim. App. 1979).

Deputy Kouba testified that either the pipe or appellant's hands, when used in the manner shown in this case, were capable of causing serious bodily injury or death. This testimony was not rebutted. He also testified that he considered the wounds in Wallace's head serious. The doctor's description of Wallace's wounds as "superficial" was qualified by his explanation that "superficial" was a medical description meaning that the lacerations did not go through the skull. The fact-finder had evidence from which it could infer that the weapon, in the manner and means of its use or intended use, was capable of causing death or serious bodily injury. Whether viewed in the light most favorable to the verdict or viewed in a neutral light, the evidence is sufficient to

---

[3] We are analyzing appellant's argument as if Wallace did not suffer serious bodily injury; we do not decide whether she did.

show that appellant used a deadly weapon. *See Jackson*, 443 U.S. at 319; *Johnson*, 23 S.W.3d at 7. We overrule appellant's first issue.

***Unknown Object***

In his second issue, appellant contends that the State was required to show that the grand jury used due diligence in attempting to determine the identity of the deadly weapon. Appellant argues that the State "cannot have it both ways!! Either there was no deadly weapon used as the victim stated, or once the State claimed that the weapon was the pipe in the trunk, a member from the grand jury should have been required to testify."

Appellant contends that when an indictment alleges that the manner or means used to cause an injury is "unknown" and the evidence at trial does not show what type of object was used, a *prima facie* showing exists that the object was unknown to the grand jury, but that if the evidence at trial shows what object was used to inflict the injury, an issue is raised whether the grand jury had information when it handed down the indictment as to the object used. *See Matson v. State*, 819 S.W.2d 839, 847 (Tex. Crim. App. 1991); *Tidrow v. State*, 916 S.W.2d 623, 630 (Tex. App.—Fort Worth 1996, no pet.). Under those circumstances, the State must prove that the grand jury did not know the manner or means of inflicting injury and used due diligence in attempting to ascertain the manner or means. *Matson*, 819 S.W.2d at 847; *Tidrow*, 916 S.W.2d at 630.[4]

The "due diligence" rule of *Matson* has been disavowed by the court of criminal appeals. *See Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); *Fagan v. State*, 89 S.W.3d 245, 249 (Tex. App.—Texarkana 2002, pet. ref'd) (rule requiring State to show that grand

---

[4] These are the only two cases cited by appellant in his discussion of this issue.

jury exercised due diligence in determining instrumentality of offense no longer relevant). Further, even under appellant's now superseded analysis, he would not prevail. If the evidence indicates that there could have been more than one object or method of inflicting injury or a combination of objects or methods, then there is a *prima facie* showing that the object or cause was unknown to the grand jury. *See Tidrow*, 916 S.W.2d at 630. Based on Wallace's testimony and the physical evidence, the trier of fact rationally could have concluded that the object used was the pipe found with a spot of Wallace's blood on it. Based on Wallace's testimony, the trier of fact rationally could have concluded that appellant's hands were used. The trier of fact could have concluded that both were used. *See id*. Accordingly, an unrebutted *prima facie* showing was made that the object was unknown. The State did not have to prove that the grand jury used due diligence to attempt to learn the identity of the object. We overrule appellant's second issue.

## Conclusion

We have considered and overruled both of appellants' issues presented. Accordingly, we affirm his conviction.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: January 12, 2006

Do Not Publish

7